IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01099-MEH

VIRGINIA BAUMER,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Virginia Baumer appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and her application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83c. Jurisdiction is proper under 42 U.S.C. § 405(g). The Court first holds the ALJ did not err by formulating alternative residual functioning capacities ("RFC") to find Ms. Baumer was not disabled. Further, the ALJ properly applied the treating physician rule. Finally, any error by the ALJ in determining that Ms. Baumer's mental impairments were not severe was ultimately harmless. Accordingly, the Court affirms the ALJ's decision that Ms. Baumer was not disabled from March 22, 2013 through the date of the decision.

## BACKGROUND

### I.    Ms. Baumer's Conditions

      Plaintiff Virginia Baumer was born on December 30, 1970; she was forty-two years old

when she filed her application for DIB and SSI. [AR 177, 194]. Prior to her alleged disability, Ms. Baumer had worked as a personal assistant and a nanny. [AR 222]. Ms. Baumer claims she became disabled on March 22, 2013. [AR 177].

Ms. Baumer's symptoms began when she experienced numbness in her fourth and fifth fingers on her left hand. [AR 285]. In June 2012, approximately one year after the onset of these symptoms, she visited Dr. Gregory Kirkorowicz for a comprehensive neurological consultation. [AR 285]. Dr. Kirkorowicz stated that Ms. Baumer was "affected by neurological symptoms such as urinary incontinence, paresthesias, loss of fine motor movements and frequent headaches." [AR 290]. Dr. Kirkorowicz recommended Ms. Baumer receive an MRI, and he noted that "further study is now urgently needed." [*Id.*]

On October 18, 2012, Ms. Baumer visited Dr. Cyrus Mody, who performed MRIs of her brain and spine. Those scans revealed "multiple deep white matter lesions involving both hemispheres" of her brain and "deep white matter pathology" of the cervical spine. [AR 295]. Dr. Mody noted that "[t]he most likely etiology for this disease would be multiple sclerosis ("MS")." [*Id.*]

After this diagnosis, Ms. Baumer moved from California to Colorado to establish care for her disease and to be closer to her family. [AR 420]. In August 2013, Dr. Augusto Miravalle began managing Ms. Baumer's neurological care. [AR 530]. Physician assistant Tom Stewart regularly observed that Ms. Baumer had normal speech and cognition but major symptoms of gait disorder, numbness and tingling in her extremities, back pain, urinary frequency, and fatigue. [AR 309–10, 389, 398, 415–17]. He also noted that Ms. Baumer demonstrated a right hand tremor, slow foot tap, and mild difficulty tandem walking. [AR 309–10, 392, 399, 404–05, 415–17]. Two MRIs revealed

lesions on her brain and brainstem. [AR 450–52, 464–65].

On January 4, 2014, consultative physician Dr. Adam Summerlin examined Ms. Baumer. [AR 335]. Dr. Summerlin documented several incidents during the examination that led him to be skeptical of Ms. Baumer's reported symptoms and physical abilities. [AR 336–37]. For example, although Ms. Baumer "had to get up three times during the course of the 40-minute interview and examination to use the rest room[,]" she "was only gone for approximately 60-70 seconds, and given the slow rate of ambulation and distance to the bathroom, it is improbable that she did more than walk to the bathroom, turn around, and come back to the exam room." [AR 336–37]. Dr. Summerlin concluded Ms. Baumer's presentation was "somewhat uncommon with regard to multiple sclerosis[,]" and "[p]hysical examination finding[s] are inconclusive for any definite diagnosis." [AR 339–40]. Regarding Ms. Baumer's physical abilities, he stated she had a maximum standing and walking capacity of up to two hours "if there is an objective etiology for the wide-based gait and gait instability." [AR 339].

One month later, Ms. Baumer visited Dr. Stuart Kutz for a detailed mental status examination. [AR 343]. Dr. Kutz noted that Ms. Baumer presented "as somewhat dramatic and probably with histrionic features." [AR 347]. For example, when Dr. Kutz asked Ms. Baumer to spell "house," Ms. Baumer responded, "h-u-s-c-e." [*Id.*] Dr. Kutz found the attempt "d[id] not seem credible given her Associate of Arts degree and this unusual spelling." [*Id.*] After Dr. Kutz questioned Ms. Baumer about the spelling, she proceeded to spell the word correctly. [*Id.*] Ultimately, Dr. Kutz wrote he "believe[d] that there is symptom exaggeration here," and "her degree of displayed dysfunction seems well beyond her actual symptoms . . . ." [AR 348]. Furthermore, he concluded that Ms. Baumer's "attention/concentration, persistence and pace in task completion,

and social adaptation would be mildly to moderately impaired at most." [AR 349].

On July 10, 2014, speech pathologist Debra Bandstra performed a cognitive functional capacity exam on Ms. Baumer. [AR 475]. Ms. Bandstra found that Ms. Baumer was significantly impaired in a number of areas, including her ability to "maintain attention and concentration for extended periods of time." [AR 473]. However, Ms. Bandstra noted that Ms. Baumer's "unusual behavior and lack of effort may have negatively affected [the] test results." [AR 475].

Four days later, occupational therapist Kristina Anderson completed an assessment of Ms. Baumer's ability to do work-related activity. [AR 466–72]. Ms. Anderson found Ms. Baumer had significant physical limitations. For example, she stated Ms. Baumer was limited to standing for forty-five consecutive seconds and for a maximum of two minutes during an eight-hour work day. [AR 467]. However, Ms. Anderson noted that it was questionable whether Ms. Baumer gave "full effort" during each assessment and that Ms. Baumer was unwilling to attempt several of the tests. [AR 466–67]. Additionally, Ms. Anderson observed inconsistencies in some of Ms. Baumer's claims. For example, Ms. Baumer was unwilling to do an ankle strength test, because she reported experiencing "shooting bolts of flame throwing fire" if someone touched her foot, but she was able to tolerate the contact of her socks and shoes, and she had received a manicure (presumably pedicure) in the recent past. [AR 467].

On February 5, 2015, occupational therapist Kristine Couch performed a functional abilities evaluation of Ms. Baumer. [AR 492]. Ms. Couch found Ms. Baumer sustained a maximum seated tolerance of sixty consecutive minutes, a maximum standing tolerance of fifteen consecutive minutes, and could walk fifty feet. [AR 493]. Ms. Couch concluded that Ms. Baumer was not capable of maintaining any gainful employment. [AR 496].

State agency consultants reviewed Ms. Baumer's medical records and made findings regarding her ability to maintain employment. In a psychiatric review technique form, Dr. Gayle Frommelt found Ms. Baumer had mild limitations in activities of daily living; mild difficulty in maintaining social function; and moderate difficulty in maintaining concentration, persistence, and pace. [AR 92]. She also found that Ms. Baumer could complete a normal workweek so long as the work does not involve tasks of more than limited complexity and attention to detail. [AR 96–97]. In a physical RFC assessment, Dr. Paul Barrett found that, with some postural and environmental limitations, Ms. Baumer could stand or walk for two hours and sit for six hours during an eight-hour work day. [AR 92–94].

## II.    Procedural History

Ms. Baumer asserts she first became disabled on March 22, 2013. [AR 177]. On February 11, 2014, the SSA initially denied her application for DIB and SSI. [AR 114–19]. Ms. Baumer subsequently requested a hearing before an ALJ, which took place on February 11, 2015. [AR 48, 120]. On May 5, 2015, the ALJ issued an opinion holding that Ms. Baumer is not disabled. [AR 22–47]. According to the ALJ, although Ms. Baumer's MS is a severe impairment, it does not meet the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 27–29]. The ALJ then held that Ms. Baumer maintained the RFC to perform her past relevant work. [AR 41]. The ALJ proceeded to make an alternative finding that, even had he assigned a more restrictive RFC to Ms. Baumer, he would still decide she is not disabled, because she would be able to perform work that exists in significant numbers in the national economy. [AR 42–43].

The SSA Appeals Council denied Ms. Baumer's request for review on November 4, 2016, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 5–7]; *see* 20

C.F.R. § 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."). Ms. Baumer timely appealed the ALJ/Commissioner's final decision to this Court. Compl., ECF No. 1.

## III.    Hearing Testimony

The ALJ held a hearing regarding Ms. Baumer's application on February 11, 2015. [AR 48–79]. Ms. Baumer and a vocational expert testified at the hearing. [AR 49]. Ms. Baumer stated that the only physical or mental impairment preventing her from working was her MS. [AR 53–54]. Ms. Baumer said that her MS resulted in "flares" that exacerbated her condition and caused her to spend twenty hours in bed each day. [AR 54–56]. She then testified both that a flare had begun a week earlier and that she had been in a constant flare since the beginning of the year. [AR 54–55]. The ALJ questioned Ms. Baumer about these seemingly contradictory statements, and Ms. Baumer responded by saying the flare had been "on and off" since the beginning of the year. [AR 55]. Ms. Baumer also stated she has spent ninety percent of her time in bed since the onset of her disability on March 22, 2013. [AR 57].

Ms. Baumer then testified about her physical abilities. She stated she has trouble lifting her handbag, which weighs three to five pounds. [AR 62–63]. Additionally, she frequently drops objects, because her hands are numb and tingling. [AR 63]. She also testified that she can only stand for five minutes at a time, because she gets tired. [AR 63–64]. According to Ms. Baumer, she could walk only the length of a hallway before her right leg would get "wobbly" and she would lose her balance. [AR 64–65]. In response to questions from her attorney, Ms. Baumer testified that she spends a typical day in bed watching television. [AR 66]. She stated that she also likes to play the

games "Words with Friends" and "Luminosity" "to keep her mind going." [AR 66, 70]. She testified that she can concentrate on those games for a maximum of five minutes. [AR 71].

The ALJ then questioned the vocational expert. [AR 71–77]. The vocational expert first testified that Ms. Baumer's past work included the jobs of nanny and personal attendant, which involve medium and medium to light work respectively. [AR 71]. The ALJ asked the expert to imagine a hypothetical individual who could lift twenty pounds occasionally; lift ten pounds frequently; stand or walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps or stairs; and never climb ladders, scaffolds, or ropes. The ALJ then asked the expert whether the hypothetical person could perform Ms. Baumer's past work. [AR 73]. The expert testified that Ms. Baumer could not perform that work, because Ms. Baumer indicated that her past work required her to lift fifty pounds. [AR 73–74]. However, the expert opined that Ms. Baumer could perform the duties of a personal attendant as the job is generally performed. [AR 74]. The ALJ then added the following restrictions to the hypothetical individual: could stand or walk for no more than two hours; sit for six hours; frequently balance; and occasionally stoop, crouch, kneel, and crawl. [AR 74]. The expert testified that the hypothetical person could not perform Ms. Baumer's past relevant work as she performed it or as it is generally performed. [*Id.*] The ALJ then asked the expert whether the hypothetical person could perform any jobs in the national economy. The expert testified the person could perform the duties of a small product assembler, an electronics worker, and a hand painter and stainer. [AR 73–74].

Finally, Ms. Baumer's attorney questioned the vocational expert. [AR 76–77]. The attorney asked the expert to consider the ALJ's second hypothetical individual but with the additional manipulative restrictions that the person could only occasionally reach, handle, finger, and feel. [AR

76].  The expert stated that those restrictions would eliminate all jobs in the national economy.  [*Id.*]

The attorney also asked whether a person with those restrictions who was off task fifteen percent

of the day would be able to perform Ms. Baumer's past relevant work.  [*Id.*]  The expert testified the

person could not.  [*Id.*]

The ALJ issued an unfavorable decision on May 5, 2015.  [AR 25–43].

## LEGAL STANDARDS

### I.    SSA's Five-Step Process for Determining Disability

Here, the Court will review the ALJ's application of the five-step sequential evaluation

process used to determine whether an adult claimant is "disabled" under Title II of the Social

Security Act, which is generally defined as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. § 1382c(a)(3)(B); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step one determines whether the claimant is presently engaged in substantial gainful activity.

If she is, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Step two analyzes

whether the claimant has a medically severe impairment or combination of impairments, as governed

by 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is unable to show that her impairment(s)

would have more than a minimal effect on her ability to do basic work activities, she is not eligible

for disability benefits.  *See id.*  Step three analyzes whether the impairment is equivalent to one of

a number of listed impairments deemed to be so severe as to preclude substantial gainful

employment.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairment is listed or

is equivalent to a listed impairment, she is presumed to be disabled.  If the impairment does not

satisfy step three, the ALJ must proceed to step four, which requires the claimant to show that her impairment(s) and RFC prevent her from performing work that she has performed in the past. If the claimant is capable of performing her previous work, either as she performed it or as it is generally performed in the national economy, she is not disabled. *See* 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("[C]laimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy."). However, if the claimant establishes a prima facie case of disability based on the previous four steps, the analysis proceeds to step five, where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## II.     Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The

Court may not reweigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## THE ALJ'S RULING

The ALJ first ruled that Ms. Baumer meets the insured status requirements of the Social Security Act through June 30, 2017. [AR 27]. Next, the ALJ determined that Ms. Baumer has not engaged in substantial gainful employment since March 22, 2013—the alleged onset date. [*Id.*] At step two, the ALJ held that Ms. Baumer has a severe impairment of multiple sclerosis, relapsing remitting type. [*Id.*]

The ALJ also addressed whether Ms. Baumer possessed mental impairments that qualified as severe. The ALJ recognized that Ms. Baumer has been diagnosed with dysthymic disorder, anxiety disorder, substance use disorder, and personality disorder. [AR 28]. The ALJ then assessed the degree of functional limitations that have resulted from those impairments. The ALJ found that Ms. Baumer had mild restrictions in daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. [AR 28]. In addressing his finding of mild limitations of concentration, persistence, and pace, the ALJ noted that he disagreed with the opinions of a consultative examiner and a state agency psychological consultant, both of whom found Ms. Baumer potentially had moderate limitations. [AR 29]. According to the ALJ, both opinions "overstated the claimant's functional limitation, and neither opinion is supported by the longitudinal record." [*Id.*]

Specifically, Ms. Baumer testified that she played the online games "Words with Friends" and "Luminosity." [*Id.*] He emphasized these games "clearly require[] the ability to concentrate and to persist to the end or conclusion of each game." [*Id.*] He also noted that "Luminosity" "is advertised as being created by neuroscientists, and its purpose is to stimulate the brain." [*Id.*] With these findings, the ALJ decided none of Ms. Baumer's mental impairments were severe. [*Id.*]

At step three, the ALJ found that Ms. Baumer's impairments do not medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 18–20]. Specifically, the ALJ decided that Ms. Baumer's limitations do not meet the severity of listing 11.09 for MS. [AR 30].

At step four, the ALJ held that Ms. Baumer has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following exceptions: she can lift twenty pounds occasionally, lift ten pounds frequently, stand or walk for four hours and sit for six hours in an eight-hour workday, and climb ramps and stairs occasionally. [AR 30]. Additionally, she is unable to climb ladders, scaffolds, and ropes. [*Id.*] In determining Ms. Baumer's RFC, the ALJ found her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. [AR 31]. As a part of this credibility finding, the ALJ identified instances where Ms. Baumer's conduct was inconsistent with her assertions. [AR 31–32]. For example, Ms. Baumer testified that she could concentrate for only five minutes. [AR 71]. However, the ALJ observed her maintain attention without difficulty during the forty-five minute hearing. [AR 32]. The ALJ also found evidence of repeated exaggeration and symptom magnification in the record. [AR 32–33].

To determine Ms. Baumer's RFC, the ALJ first decided not to give controlling weight to any of the treating sources in the record, because "[t]he treating source opinions are not 'consistent' with 'the other substantial evidence' in the record." [AR 34–35 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2))]. The ALJ gave more weight to the opinions of Dr. Frommelt, Dr. Barrett, Dr. Summerlin, and Dr. Kutz, as those sources are experts in the evaluation of SSA disability claims, and their opinions were "more consistent with the longitudinal record." [AR 38].

The ALJ then found Ms. Baumer is not disabled, because her RFC permits her to perform her past relevant work as a personal attendant. [AR 41]. Despite his decision that Ms. Baumer was not disabled at step four, the ALJ proceeded to state in the alternative that, even had he found Ms. Baumer possessed a more restrictive RFC, he would still find that she was not disabled at step five. [AR 42–43]. For this alternative analysis, the ALJ added the restrictions that she could stand for only two hours in an eight-hour workday and could stoop, crouch, kneel, and crawl occasionally. [AR 42]. The ALJ relied on the testimony of the vocational expert to find that, with this RFC, Ms. Baumer retained the ability to perform the duties of a product assembler, electronics worker, and hand painter and stainer, which are jobs that exist in the national economy. [*Id.*] As such, the ALJ held that Ms. Baumer has not been disabled from March 22, 2013 through the date of the decision. [AR 43].

## ISSUES ON APPEAL

On appeal, Ms. Baumer alleges the following grounds for reversal of the Commissioner's decision: (1) the ALJ erred as a matter of law in finding two separate RFCs; (2) the ALJ did not properly apply the treating physician rule; and (3) the ALJ erred in using his own credibility finding to determine Ms. Baumer's mental RFC. Opening Br., ECF No. 13.

<u>**ANALYSIS**</u>

**I.      The ALJ's Decision to Find Two Alternative RFCs**

Ms. Baumer first argues the ALJ erred in identifying and addressing two separate RFCs. Opening Br. 1, ECF No. 13.  To support this argument, Ms. Baumer cites to several provisions of the Code of Federal Regulations and one ruling of the SSA that either presume or explicitly state that an ALJ will use the same RFC at steps four and five of the analysis.  Opening Br. 2 (citing 20 C.F.R §§ 404.1520(e), 404.1545(a)(5)(ii); SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("This assessment of RFC is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work . . . .").  However, this argument is unavailing, because the Tenth Circuit has explicitly endorsed the use of alternative analyses by ALJs.  *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994) ("We thus not only specifically reject plaintiff's objection to the ALJ's alternative disposition here, but expressly reaffirm our favorable view of such dispositions generally.").  Indeed, "the use of alternative dispositions generally benefits everyone: the Secretary relieves a pressing work load by resolving cases thoroughly once; the courts avoid successive, piecemeal appeals; and litigants are spared the protracted delays that result when a case drags on incrementally . . . ." *Id.*

Additionally, the alternative RFC favored Ms. Baumer.  At step four, the ALJ used an RFC that permitted Ms. Baumer to perform her past work.  [AR 30].  The ALJ could have found that Ms. Baumer was not disabled without further analysis.  Therefore, the ALJ's alternative analysis benefitted Ms. Baumer by creating the possibility that Ms. Baumer would be classified as disabled at step five.

The Tenth Circuit addressed a similar situation in *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir.

2012).  There, an ALJ found that a claimant had the physical RFC to perform light work even though the ALJ had attributed weight to only a single doctor whose opinion was that the claimant had "no physical restrictions" other than needing appropriate breaks.  *Id.* at 1287–88.  The Tenth Circuit then characterized the ALJ's actions as "temper[ing]" the doctor's opinion "*in the claimant's favor*" to arrive at the conclusion that the claimant could only perform light work.  *Id.* at 1288.  While the claimant argued this decision was reversible error, the Tenth Circuit disagreed and found that "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."  *Id.*  Similarly, after deciding Ms. Baumer possessed an RFC that permitted her to perform her past work, the ALJ then moderated this finding in a manner that favored her.  Even considering a more restricted RFC, the ALJ found that Ms. Baumer would not be disabled.  This was not reversible error.

## II.    The ALJ's Application of the Treating Physician Rule

Ms. Baumer argues the ALJ misstated the treating physician rule and further states that the ALJ rejected the opinion of Dr. Miravalle[1] "for no good reason."  Opening Br. 4–10, ECF No. 13.  Defendant argues the ALJ sufficiently supported his reasons for discounting the opinions of Ms. Baumer's treating sources.  Resp. Br. 15–17, ECF No. 14.

The treating physician rule generally requires that the Commissioner "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*,

---

[1] The ALJ's decision does not explicitly identify whose opinions he is treating as Ms. Baumer's treating source(s).  Nevertheless, both parties seem to agree the ALJ addressed at least the opinion of Dr. Miravalle as a treating source.  *See* Opening Br. 4–10; Resp. Br. 15–17, ECF No. 14.  In any event, Ms. Baumer objects only to the decision to afford less weight to Dr. Miravalle's opinion.  *See* Opening Br. 4–10.

373 F.3d 1116, 1119 (10th Cir. 2014); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When determining how much weight to give an opinion from a treating source, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the treating physician has offered a conclusive opinion; that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. To do so, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. . . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) (internal quotation marks and citations omitted); *accord Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the opinion of the treating physician is not entitled to controlling weight, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. This is because "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300.

The factors the ALJ must consider are:

(1) The length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's

opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). Without a discussion of these factors, remand is required. *Watkins*, 350 F.3d at 1300–01; *accord Krauser*, 638 F.3d 1330. However, the ALJ is not required to specifically analyze all six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Ms. Baumer first argues that the ALJ erred because he misstated the treating physician rule. Opening Br. 4. She then argues the ALJ's analysis of the required factors was "boilerplate." *Id.* at 7.

A.    Statement of the Treating Physician Rule

Ms. Baumer ascribes legal error to the ALJ's recitation of the treating physician rule. Opening Br. 4. The ALJ stated the rule in his decision as follows: "In order for the opinions of a treating physician to receive controlling weight, they must be '*consistent*' with 'the other substantial evidence' in the record." [AR 34–35 (emphasis added)]. This paraphrases the text of the rule, which states a treating physician's opinion may be given controlling weight so long as the opinion "is *not inconsistent* with substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (emphasis added). The Court does not find legal error in the ALJ's statement of the rule. First, the ALJ identifies the verbatim text of the rule in a footnote immediately following his statement of the rule. *See* [AR 35 n.4]. Additionally, the Tenth Circuit has used the same language to paraphrase the same rule. *See, e.g.*, *Marshal v. Astrue*, 315 F. App'x 757, 760 (10th Cir. 2009); *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007); *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).

Furthermore, the Court holds the ALJ's application of the rule was proper. The ALJ proceeded to decide that Ms. Baumer's treating source opinion was not entitled to controlling weight, because the opinion was inconsistent with substantial evidence in the record. [AR 35]. Specifically, the ALJ noted that the medical record included the opinions of agency medical consultants Dr. Frommelt and Dr. Barrett, both of whom concluded that Ms. Baumer still had the capacity to perform substantial gainful activity. [*Id.*] The ALJ also cited the opinions of consultative examiners Dr. Kutz and Dr. Summerlin, both of whom arrived at the same conclusion. [*Id.*] Courts regularly affirm an ALJ's decision not to apply controlling weight to a treating physician, because the opinion is inconsistent with substantial evidence in the record. *See, e.g.*, *Hackett*, 395 F.3d at 1174; *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). The Court holds the ALJ properly applied the treating physician rule, and his decision not to afford the treating source opinions controlling weight was supported by substantial evidence.

B.      The ALJ's Analysis of the Treating Physician Rule Factors

Ms. Baumer next argues remand is appropriate, because the ALJ "made no findings under the required factors in [the Code of Federal Regulations]. Rather, the ALJ's discussion of Dr. Miravalle's opinion is pure boilerplate and mere conclusion." Opening Br. 5. Defendant argues the ALJ specifically described the reasons for which he discounted Ms. Baumer's treating source opinions. Resp. Br. 17.

The Court agrees with Defendant. Ms. Baumer is correct that "boilerplate" analysis that does not cite specific evidence in the record is insufficient to support the decision of an ALJ. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (stating "conclusory analysis, which neither reveals what 'other reasons' or 'other factors' prompted the ALJ's conclusions, nor is tethered to

specific evidence, constitutes the type of disfavored boilerplate" that will not suffice to support an ALJ's findings). However, the ALJ did not support his findings with only boilerplate conclusions.

In discussing the opinion of Dr. Miravalle, the ALJ recognized the following observations from Dr. Miravalle's evaluation of Ms. Baumer:

• Dr. Miravalle has been managing Ms. Baumer's neurological care since August 2013;

• Ms. Baumer's neurological examination showed gait abnormality, lower extremity weakness, upper extremity incoordination, and sensory abnormalities;

• An MRI showed multiple deep white matter lesions consistent with MS, including black holes, which are generally associated with a higher degree of disability; and

• Ms. Baumer reported severe fatigue, which is consistent with a diagnosis of MS.

[AR 37–38].

The ALJ went on to discuss these facts and how they relate to the six factors in 20 C.F.R. §§ 404.1527(c), 416.927(c).[2] The ALJ noted Ms. Baumer had "an extended treatment relationship" with her treating source and gave the source some weight for that reason. [AR 39]. However, the ALJ gave the treating source opinions less weight, because they were inconsistent with the medical record as a whole. [AR 40]. For example, the ALJ noted that the treating source opinions were inconsistent with the opinions of Dr. Frommelt, Dr. Barrett, Dr. Kutz, and Dr. Summerlin. [*Id.*]

---

[2] Ms. Baumer argues the ALJ erred, because he considered the "depth of understanding[] that the medical source has of SSA disability programs and SSA regulatory and evidentiary requirements" in his discussion of the six factors in 20 C.F.R. §§ 404.1527(c), 416.927(c). Opening Br. 8–9; *see* [AR 39–40]. This argument is not persuasive, because 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) state that an ALJ may consider "[o]ther factors," such as "the amount of understanding of our disability programs and their evidentiary requirements that a medical source has . . . ." Therefore, the ALJ did not err by considering the treating sources' understanding of SSA regulatory requirements in his analysis of the treating physician rule.

Furthermore, the ALJ found that the treating source opinions were heavily influenced by Ms. Baumer's self-reporting, which was not fully credible.[3]  [*Id.*]  Therefore, the ALJ specifically discussed at least four of the factors, and ALJs are not specifically required to address all six factors. *Oldham*, 509 F.3d at 1258.  The Court holds the ALJ properly analyzed the required factors.

## III.    The ALJ's Finding of Ms. Baumer's Mental RFC

Ms. Baumer argues the ALJ erred in finding she had only mild limitation in her ability to maintain concentration, persistence, and pace in full-time work.  Opening Br. 10, ECF No. 13. Defendant argues the ALJ's finding of Ms. Baumer's mental RFC was reasonable and not legal error.  Resp. Br. 9, ECF No. 14.  Additionally, Defendant contends any error was harmless.  *Id.* at 10.

The ALJ found Ms. Baumer had only mild limitation in maintaining concentration, persistence, and pace, and he recognized this "finding disagrees with the opinions of the consultative examiner and the State Agency psychological consultant." [AR 29].  Specifically, he noted Dr. Kutz found Ms. Baumer had mild to moderate impairment in maintaining concentration, persistence, and pace; and Dr. Frommelt opined Ms. Baumer had moderate limitation.  [*Id.*]  To arrive at his differing conclusion, the ALJ relied on Ms. Baumer's testimony that "she plays online games, and that these computer games require concentration, persistence, and pace."  [*Id.*]  Specifically, he noted Ms.

_____

[3] Ms. Baumer argues the ALJ improperly discounted the opinions of her treating sources, because he found those opinions relied on self-reporting.  Opening Br. 10.  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).  Here, however, the ALJ relied not only on his own findings of Ms. Baumer's credibility, but on evidence of symptom magnification in the record. [AR 32–34 (citing eight different observations by medical sources of symptom magnification in the record)].

Baumer plays "Words with Friends," a game he said "clearly requires the ability to concentrate and to persist to the end of or conclusion of the game." [*Id.*] Additionally, he noted that Ms. Baumer testified she played "Luminosity," a game that is advertised as "created by neuroscientists" and has the "purpose [of] stimulat[ing] the brain." [*Id.*] Relying on these observations—and Ms. Baumer's "credibility issues"—the ALJ found "that a mild limitation in concentration, persistence, or pace is more consistent with th[e] evidence." [*Id.*]

The Court finds that the ALJ's assessment of Ms. Baumer's mental conditions is not a proper basis for reversal. Initially, the ALJ did not fail to address the opinions that concluded Ms. Baumer had a mild to moderate limitation. Indeed, the ALJ noted that his finding disagreed with the opinions of two medical examiners, and he stated specific reasons for his determination that "both opinions overstated the claimant's functional limitation, and neither opinion is supported by the longitudinal record." [AR 29].

Furthermore, even if the ALJ erred in assessing Ms. Baumer's mental limitations, this error was harmless. The Tenth Circuit has applied the harmless error doctrine to social security disability cases. *Allen v. Barnhardt*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

Here, the ALJ found Ms. Baumer had been diagnosed with a number of mental conditions including "dysthymic disorder; anxiety disorder, not otherwise specified; substance use disorder; and personality disorder." [AR 28]. The ALJ then proceeded (although not explicitly) to evaluate

these impairments using the SSA "special technique." [AR 27–29]; 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Applying this technique, the ALJ must rate the degree of a claimant's functional limitations in the categories of "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Because the ALJ decided that Ms. Baumer's mental impairments resulted in no more than mild limitations in any of the regulatory categories,[4] the ALJ decided her impairments were not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Had the ALJ found Ms. Baumer had moderate impairment in her ability to maintain concentration, persistence, and pace, the ALJ may have found that her mental impairments were severe. *See id.* However, at step three, a moderate impairment in one category does not rise to the level of any of the listed impairments. *See, e.g.*, 20 C.F.R., pt. 404, subpt. P, App. 1 §§ 12.02(B), 12.04(B), 12.06(B) (requiring two marked impairments of the paragraph B categories). The ALJ found that Ms. Baumer had no marked impairments in the "paragraph B" categories. Therefore, the decision did not prejudice Ms. Baumer at step three. *Stokes v. Astrue*, 274 F. App'x 675, 679–82 (10th Cir. 2008) (concluding no reasonable factfinder could have found the claimant had marked restrictions in two paragraph B categories, and therefore, the ALJ's failure to properly utilize the "special technique" at step three was harmless error).

The Court also notes that any error in evaluating Ms. Baumer's ability to maintain concentration, persistence, and pace did not affect the ALJ's analysis at step four. Even assuming the ALJ should have found a mild to moderate limitation in this area, as some of the medical experts opined, this limitation is consistent with a light work RFC. *See King v. Colvin*, No. 12-cv-01479-

---

[4] Ms. Baumer does not dispute the ALJ's findings in any category other than concentration, persistence, and pace.

RBJ, 2013 WL 3296532, at *9 (D. Colo. July 1, 2013) (affirming an ALJ's determination that the claimant was limited to light work, notwithstanding that the ALJ found the claimant had a moderate limitation in his ability to maintain attention and concentration); *Sparks v. Barnhart*, No. 06-1037-JTM, 2007 WL 120810, at *2 (D. Kan. Jan. 11, 2007) (same); *Cates v. Astrue*, No. 08-1040-JTM, 2009 WL 348287, at *3 (D. Kan. Feb. 11, 2009) (affirming the ALJ's finding of a light work RFC, because the claimant's "treating sources consistently indicated that his mental impairments would impose only mild to moderate limitation"); *see generally Patterson v. Colvin*, 662 F. App'x 634, 638 (10th Cir. 2016) ("The ALJ's finding of moderate limitations at step three 'does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.'" (quoting *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015))).

Finally, even if the ALJ erred in formulating Ms. Baumer's RFC, the ALJ would still have found Ms. Baumer not disabled at step four. Indeed, the vocational expert's response to a question regarding a hypothetical individual confirms as much. Ms. Baumer's attorney asked the vocational expert whether an individual who is off task fifteen percent of the average work day would be able to perform Ms. Baumer's past work. [AR 76]. The vocational expert testified that the individual would likely be able to perform the duties of a personal attendant—a job Ms. Baumer previously performed. [AR 76]. The ALJ could have relied on this testimony to find Ms. Baumer not disabled at step four. *See Seever v. Barnhart*, 188 F. App'x 747, 753 (10th Cir. 2006) ("[T]he ALJ included a work-pressures restriction in his hypothetical to the VE, who listed the same jobs that the ALJ ultimately derived at step five. Thus, the ALJ's failure to include the restriction as part of his written RFC determination was harmless.").

In sum, the ALJ properly analyzed Ms. Baumer's ability to maintain concentration,

persistence, and pace. Regardless, even if the ALJ erred in his analysis, no reasonable factfinder could have decided she had an impairment that equaled any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Additionally, a finding of mild to moderate limitation in maintaining concentration, persistence, and pace would not have necessarily affected the ALJ's analysis at step four. Therefore, any error by the ALJ in determining that Ms. Baumer had only mild impairment in maintaining concentration, persistence, and pace was harmless.

## CONCLUSION

The ALJ did not commit error in determining that Ms. Baumer was not disabled from March 22, 2013 through the date of his decision. Specifically, the ALJ properly used alternative RFCs to decide Ms. Baumer was not disabled during different analyses at step four and step five. Further, the ALJ's application of the treating physician rule was proper. Finally, any error by the ALJ in applying the 20 C.F.R. §§ 404.1520a(a), 416.920a(a) "special technique" and determining Ms. Baumer's mental RFC was ultimately harmless. Accordingly, the decision that Plaintiff Virginia Baumer was not disabled is **affirmed**.

Dated at Denver, Colorado this 16th day of November, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge